UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA | Criminal No. *19CR 10080* |
| | Violation: |
| v. | |
| | Count One: Conspiracy to Commit Mail and Wire Fraud (18 U.S.C. § 1349) |
| DAVID SIDOO, | |
| Defendant. | |
| | Forfeiture Allegations: (18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461) |

INDICTMENT

At all times relevant to this Indictment:

General Allegations

1.     Defendant, David SIDOO ("SIDOO"), was a resident of Vancouver, Canada. SIDOO has two sons.

2.     William Rick Singer, was a resident, variously, of Sacramento and Newport Beach, California.

3.     Mark Riddell was a resident of Palmetto, Florida.

4.     The Edge College & Career Network, LLC, also known as "The Key," was a for-profit college counseling and preparation business that Singer founded in or about 2007 and incorporated in the State of California in or about 2012.

5.     ACT, Inc. is a non-profit organization headquartered in Iowa City, Iowa that administers the ACT, a standardized test that is widely used as part of the college admissions process in the United States.

6.     The College Board is a non-profit organization headquartered in New York, New York. Together with Educational Testing Service ("ETS"), a nonprofit organization headquartered in Lawrence Township, New Jersey, the College Board develops and administers the SAT, a standardized test that, like the ACT, is widely used as part of the college admissions process in the United States. The College Board and ETS also develop and administer SAT subject tests, which are also used as part of the college admissions process.

Background on Standardized Testing

7.     Most selective colleges in the United States require students to take a standardized test, such as the ACT or the SAT, as part of the admissions process.

8.     The ACT includes sections on English, mathematics, reading and science.

9.     The SAT includes sections on writing, critical reading and mathematics.

10.    The ACT and the SAT are typically administered to large groups of students on specified dates and under strict time limits. In some instances, however, students with certain learning or other disabilities may qualify for extended time and, in such circumstances, may take the test alone, under the supervision of a test administrator retained by ACT, Inc. or the College Board.

11.    Prior to administering the ACT, test administrators must typically certify that they will administer the test in accordance with the ACT Administration Manual, and that they will ensure that the "test materials are kept secure and confidential, used for this examinee only, and returned to ACT immediately after testing."

12.     Similarly, prior to administering the SAT, test administrators must typically certify that they will administer the test in accordance with the SAT coordinator's manual, that the SAT test is the property of the College Board, and that no one other than the student can "open the test book and see the test content."

13.     The ACT tests are sent to and from the testing sites via Federal Express, a private, interstate commercial carrier.

14.     The SAT tests are sent to and from the testing sites via United Parcel Service ("UPS"), a private, interstate commercial carrier.

### The Conspiracy

15.     From in or about 2011 through in or about February 2019, SIDOO conspired with Riddell, Singer and others known and unknown to the Grand Jury to commit mail and wire fraud by (1) cheating on college entrance exams, including by having Riddell secretly take the exams in place of the actual students, or replace the students' exam responses with his own; and (2) submitting the falsified test scores to colleges and universities as part of the college admissions process.

### Purposes and Objects of the Conspiracy

16.     The principal purposes and objects of the conspiracy included the following:

   a.     to cheat on college entrance exams;

   b.     to facilitate the admission of applicants to selective colleges and universities through the submission of fraudulently obtained exam scores; and

   c.     to enrich Riddell and Singer personally.

3

### Manner and Means of the Conspiracy

17.     Among the manner and means by which SIDOO, Riddell, Singer and others known and unknown to the Grand Jury carried out the conspiracy were the following:

      a.     cheating on the SAT and ACT by having Riddell secretly take the tests in place of actual students, or replace the students' responses with his own;

      b.     submitting the fraudulently obtained scores as part of the college admissions process, including to colleges and universities in the District of Massachusetts.

### Acts in Furtherance of the Conspiracy

18.     On various dates from in or about 2011 through in or about February 2019, SIDOO, Riddell, Singer and others known and unknown to the Grand Jury committed and caused to be committed the following acts, among others, in furtherance of the conspiracy:

19.     In or about the fall of 2011, SIDOO agreed to pay Singer $100,000 to have Riddell secretly take the SAT in place of SIDOO's older son.

20.     In or about September 2011, SIDOO e-mailed Singer copies of his older son's driver's license and student identification card for the purpose of creating a falsified identification card for Riddell.

21.     Singer used the documents to obtain a falsified identification card bearing Riddell's likeness and the name of SIDOO's older son.

22.     On or about December 2, 2011, Riddell flew from Tampa, Florida to Vancouver, Canada to take the SAT in place of SIDOO's older son.

23.     Singer directed Riddell not to obtain too high a score, because SIDOO's older son had previously taken the exam himself and obtained a total score of 1460 out of a possible 2400.

4

24.     On or about December 3, 2011, Riddell used the falsified identification card to pose as SIDOO's older son in order to secretly take the SAT in his place. Riddell earned a total score of 1670 out of a possible 2400.

25.     After the exam, on December 3, 2011, Riddell returned to Tampa.

26.     On or about December 23, 2011, Singer e-mailed a copy of the SAT score Riddell secretly obtained to an administrator at Chapman University ("Chapman"), a private university in Orange, California, on behalf of SIDOO's older son.

27.     SIDOO's older son was admitted to Chapman on or about January 24, 2012, and ultimately enrolled at that university.

28.     SIDOO paid Singer $100,000, as agreed, for having Riddell take the SAT for SIDOO's older son.

29.     In or about 2012, SIDOO agreed to pay Singer to have Riddell secretly take a Canadian high school graduation exam in place of SIDOO's older son.

30.     On or about May 15, 2012, Singer purchased plane tickets for Riddell to fly from Tampa to Vancouver on June 8, 2012, and to return to Tampa shortly thereafter.

31.     On or about June 8, 2012, Riddell flew to Vancouver.

32.     On or about June 9, 2012, Riddell posed as SIDOO's older son in order to secretly take the Canadian high school graduation exam in his place.

33.     After the exam, on June 10, 2012, Riddell returned to Tampa.

34.     In or about the fall of 2012, SIDOO agreed to pay Singer $100,000 to have Riddell secretly take the SAT in place of SIDOO's younger son.

35.     On or about October 31, 2012, SIDOO emailed Singer a document listing his younger son's address and other personally identifiable information for the purpose of creating a falsified identification card for Riddell.

36.     Singer used the information to obtain a falsified identification card bearing Riddell's likeness and the name of SIDOO's younger son.

37.     On or about November 22, 2012, Singer purchased a plane ticket for Riddell to fly from Tampa to Los Angeles, California on November 29, 2012, in order to take the SAT for SIDOO's younger son.

38.     Singer directed Riddell to obtain a high score because SIDOO's younger son had not previously taken the SAT.

39.     On or about November 29, 2012, Riddell flew from Tampa to Los Angeles.

40.     On or about December 1, 2012, Riddell used a falsified identification card to pose as SIDOO's younger son in order to secretly take the SAT in his place at a high school in Orange County, California. Riddell earned a total score of 2280 out of a possible 2400.

41.     After the exam, Riddell returned to Tampa.

42.     On or about January 21, 2013, SIDOO sent an e-mail to Singer asking for wire transfer instructions.

43.     On or about January 22, 2013, an employee of the Edge College & Career Network, LLC provided SIDOO with wire instructions for a company bank account in California.

44.     On or about January 23, 2013, SIDOO wired $100,000 to the account, as agreed, for having Riddell take the SAT for SIDOO's younger son.

45.     In 2013 and 2014, SIDOO's younger son caused the SAT scores Riddell secretly obtained on his behalf to be sent to universities in the United States as part of his college applications, including on or about December 6, 2013 to Yale University in New Haven, Connecticut, on or about November 1, 2013 to the University of California – Berkeley, and on or about March 12, 2014 to Georgetown University in Washington, D.C.

46.     In or about March 2014, SIDOO's younger son was accepted to the University of California – Berkeley, and he later enrolled at that university.

47.     Singer paid Riddell approximately $5,000 plus travel expenses for each of the three exams Riddell took in place of SIDOO's children.

48.     In addition to the exams Singer paid Riddell to take for SIDOO's children, Singer likewise paid Riddell to secretly take the SAT and ACT for the children of other co-conspirators known and unknown to the Grand Jury, or to replace their responses with his own, and Singer in some of those instances also bribed the test administrators to permit Riddell to do so. As examples:

   a.     In or about October 2011, Riddell provided Student 1, a high school student in Florida, with answers to her SAT subject tests as he proctored Student 1's exams.

   b.     On or about October 3, 2015, Riddell replaced the responses on the SAT for Student 2, a high school student in California, who later sent those scores to Boston University, Boston College and Northeastern University, all of which are located in District of Massachusetts.

   c.     On or about December 9, 2017, Riddell replaced the responses on the ACT for Student 3, a high school student in California, who later sent those scores to Northeastern University.

49.    On or about October 25, 2018, Singer called SIDOO from Boston, Massachusetts. In the call, SIDOO noted that his older son was applying to business school, adding, "I thought you were gonna call me and say I got a 2100 on my GMAT"—a reference to a standardized test that is widely used as part of the business school admissions process, which is scored on a scale of 200 to 800. Singer responded, "They don't have a 2100 for the GMAT. But I would do my best to get it for ya."   SIDOO replied, "I know."

## COUNT ONE
### Conspiracy to Commit Mail and Wire Fraud
### (18 U.S.C. § 1349)

The Grand Jury charges:

50.    The Grand Jury re-alleges and incorporates by reference paragraphs 1-49 of this Indictment.

51.    From in or about 2011, and continuing through in or about February 2019, in the District of Massachusetts, the District of Connecticut, the Northern District of California, the District of Columbia, and elsewhere, the defendant,

### DAVID SIDOO,

conspired with William Rick Singer, Mark Riddell and others known and unknown to the Grand Jury to commit the following offenses:

a.    mail fraud, that is, having devised and intending to devise a scheme and artifice to defraud and to obtain money and property, to wit, testing materials and test scores of the ACT and the College Board, by means of materially false and fraudulent pretenses, representations and promises, did, for the purpose of executing and attempting to execute the scheme, deposit and cause to be deposited any matter and thing whatever to be sent and delivered by any private and commercial interstate carrier, in violation of Title 18, United States Code, Section 1341.

b.    wire fraud, that is, having devised and intending to devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises, did transmit and cause to be transmitted, by means of wire communications in interstate and foreign commerce, writings, signs,

signals, pictures and sounds, for the purpose of executing the scheme to defraud, in violation of Title 18, United States Code, Section 1343.

All in violation of Title 18, United States Code, Section 1349.

## FORFEITURE ALLEGATION
(18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c))

The Grand Jury further finds that:

52.    Upon conviction of the offense in violation of Title 18, United States Code, Section 1349, set forth in Count 1 of this Indictment, the defendant,

### DAVID SIDOO,

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offense.

53.    If any of the property described in Paragraph 52, above, as being forfeitable pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), as a result of any act or omission of the defendant --

      a.  cannot be located upon the exercise of due diligence;

      b.  has been transferred or sold to, or deposited with, a third party;

      c.  has been placed beyond the jurisdiction of the Court;

      d.  has been substantially diminished in value; or

      e.  has been commingled with other property which cannot be divided without difficulty;

it is the intention of the United States, pursuant to Title 28, United States Code, Section 2461(c), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the property described in Paragraph 52 above.

All pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c).

11

A TRUE BILL,

_____
FOREPERSON

_____
ERIC S. ROSEN
JUSTIN D. O'CONNELL
KRISTEN A. KEARNEY
LESLIE A. WRIGHT
ASSISTANT UNITED STATES ATTORNEYS
DISTRICT OF MASSACHUSETTS

District of Massachusetts: MARCH 5, 2019
Returned into the District Court by the Grand Jurors and filed.

_____
DEPUTY CLERK
3/5/19